W **FILED**

ew OCT 15 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**(EASTERN DIVISION)**
**MICHAEL BROWN, individually, and**
**LAWN MUSIC COMPANY,**
Plaintiffs,
v.
**ESTATE OF WILLIE C. COBBS,**
**PHILLIP COBBS, individually and as Executor** of the Estate of Willie C. Cobbs, and
**LATASHA COBBS CARTHANS,**
Defendants.
**Civil Action No.:** ____________________

1:26-cv-12656
Judge LaShonda A. Hunt
Magistrate Judge Laura K. McNally
RANDOM CAT 3

## CIVIL COMPLAINT FOR BREACH OF CONTRACT AND COPYRIGHT ROYALTIES ACCOUNTING

**Plaintiffs, Michael Brown and Lawn Music Company**, by and through their undersigned representation, submit this Civil Complaint against Defendants **Estate of Willie C. Cobbs**, **Phillip Cobbs**, and **Latasha Cobbs Carthans**, and in support thereof state as follows:

## I. PARTIES

**Plaintiff Michael Brown** is an individual residing at 4827 Riviera Drive, Monee, Illinois 60449, serving as the authorized representative and administrator for Lawn Music Company.

**Plaintiff Lawn Music Company** is an active music publishing and record company entity maintaining its principal place of business at 4827 Riviera Drive, Monee, Illinois 60449.

**Defendant Estate of Willie C. Cobbs** is a decedent's estate administered in the State of Arkansas (Monroe County Circuit Court, Probate Division, Case No. 48PR-22-4).

**Defendant Phillip Cobbs** is an individual residing at 1285 Trafalgar Drive, South Haven, Mississippi 38677, and is the duly appointed Executor of the Estate of Willie C. Cobbs.

**Defendant Latasha Cobbs Carthans** is an individual and royalty distributee whose business address of record is La Tasha Publishing, 1426 Blues Road, Brinkley, Arkansas 72021-9227.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to **28 U.S.C. § 1332** (diversity of citizenship) and **28 U.S.C. § 1338** (actions arising under copyright laws and related contractual accounting disputes).

Venue is proper in this judicial district pursuant to **28 U.S.C. § 1391** because a substantial part of the events and omissions giving rise to the claims occurred within this district, the original contract was executed in Illinois, and Plaintiff Lawn Music Company operates and suffers economic injury here.

## III. FACTUAL ALLEGATIONS AND CHAIN OF TITLE

On **January 28, 1971**, Lawn Music Company and songwriter Willie C. Cobbs entered into a binding **Songwriter's Agreement** granting 100% of the publishing, exploitation, and renewal rights for the musical compositions **"Slow Down, Baby"** and **"Hoppin' Bird"** to Lawn Music Company.

On **October 9, 2009**, Minnette Brown executed an *inter vivos* assignment transferring her publishing and catalog ownership interests, unifying administration under Lawn Music Company.

On **July 27, 2010**, Broadcast Music, Inc. (BMI) executed formal substitution and publisher agreements recognizing the Estate of Joseph Charles Brown and Michael Brown as authorized administrators and publishers of record.

Despite clear contractual ownership, Willie C. Cobbs and his successors breached the 1971 Songwriter's Agreement by attempting to divert publishing and royalty streams—specifically transferring publishing rights to "La Tasha Publishing" and making unauthorized secondary claims.

Following the death of Willie C. Cobbs, Defendant Phillip Cobbs, acting as Executor in Monroe County, Arkansas (Case No. 48PR-22-4), obtained an Order for Partial Distribution attempting to distribute royalties and rights to Latasha Cobbs Carthans.

Plaintiffs previously sought relief via the American Arbitration Association (AAA Case No. 01-22-0003-7209). On July 17, 2023, the arbitrator dismissed the matter *without prejudice* solely due to a lack of formal probate estate

service under state law, rather than any ruling on the merits. Plaintiffs subsequently exhausted administrative modification requests on August 28, 2023.

Third-party publishers confirmed that competing claims asserted by CD Baby o/b/o La Tasha Music were improper, but withheld royalty accountings and diverted funds remain unrecovered.

## IV. CAUSES OF ACTION

**COUNT I: Breach of Contract (The 1971 Songwriter's Agreement)**

Plaintiffs incorporate paragraphs 1 through 14 by reference.

The January 28, 1971 Agreement is a valid, binding contract between Lawn Music Company and Willie C. Cobbs. Defendants breached said contract by failing to remit publishing shares, attempting unauthorized reassignments of publishing rights to La Tasha Publishing, and diverting royalties rightfully due to Lawn Music Company.

As a direct and proximate result of Defendants' breach, Plaintiffs have suffered substantial financial damages, including unrecovered royalties and arbitration expenses totaling over $15,000.00.

**COUNT II: Accounting and Constructive Trust**

Plaintiffs incorporate paragraphs 1 through 14 by reference.

As exclusive publishers under the 1971 Agreement, Plaintiffs are entitled to a full, complete accounting of all monies collected by Willie C. Cobbs, his estate, Phillip Cobbs, and Latasha Cobbs Carthans from BMI, Harry Fox, Embassy Music, and other third-party clearinghouses.

Plaintiffs request that this Court impose a constructive trust upon all improperly diverted royalty funds held by Defendants.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Michael Brown and Lawn Music Company respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

A. Awarding actual and compensatory damages for breach of contract in an amount to be proven at trial;

B. Ordering a full, complete judicial accounting of all publishing and writer royalties collected for "Slow Down, Baby," "Hoppin' Bird," and related compositions from 1994 to the present;

C. Imposing a constructive trust over all improperly diverted funds distributed under the Arkansas probate proceedings (Case No. 48PR-22-4);

D. Awarding Plaintiffs their costs, arbitration expenses, and reasonable attorneys' fees; and

E. Granting such other and further relief as this Court deems just and proper.

**Dated:** October 14, 2026

**Respectfully submitted,**

**Michael Brown**, *Pro Se*
Individually and as Administrator for Lawn Music Company
4827 Riviera Drive
Monee, Illinois 60449
Phone: 708-539-4045
Email: lawnmusic1947@yahoo.com

## INDEX OF MASTER EXHIBITS

**Exhibit 1:** October 9, 2009 Minnette Brown *Inter Vivos* Assignment (Publishing/Catalog).

**Exhibit 2:** October 9, 2009 Cobbs / Lawn Music Assignment & Ratification.

**Exhibit 3:** IRS Letter 147C EIN Compliance Verifications ( 94-6804755 & 36-4665057 ).

**Exhibit 4:** BMI Master Publishing Agreements.

**Exhibit 5:** January 28, 1971 Willie C. Cobbs / Lawn Music Co. Songwriter's Contract (*"Slow Down, Baby"* & *"Hoppin' Bird"*).

**Exhibit 6:** September 14, 2022 AAA Demand for Arbitration against Willie C. Cobbs.

**Exhibit 7:** May 24, 2023 AAA Summary Statement & Fee Invoices (Case No. 01-22-0003-7209).

**Exhibit 8:** May 3, 2023 AAA Scheduling Event & Preliminary Hearing Order.

**Exhibit 9:** July 17, 2023 AAA Final Award (Dismissal Without Prejudice).

**Exhibit 10:** August 7, 2023 Complete AAA Modification Request Packet (including Monroe County Probate Order Case No. 48PR-22-4, Wise Music correspondence, and BMI records).

1OF2

# ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS

THAT FOR IN CONSIDERATION OF THE SUM OF ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION, RECIEPT WHEREOF IS HEREBY ACKNOWLEDGED, MINNETTE BROWN (HEREINAFTER ½ ASSIGNOR) HEREBY BARGAINS, SELLS, GRANTS, TRANSFERS, ASSIGNS, AND SETS OVER UNTO MICHAEL BROWN INDEPENDENT ADMINISTRATOR OF JOE BROWNS ESTATE . AND EACH OF THEIR SUCCESORS AND ASSIGNS, FOREVER AND WITHOUT LIMITATION ALL RIGHTS, INTEREST, CLAIMS AND EMCUMBRANCES, MY 50% OF THE PUBLISHING AND MY 50% OF THE MUSICAL COMPOSITIONS ON ( PAGE 3 ). 1( FUNKY MONKEY )OWNED BY LAWN MUSIC COMPANY VI433P251 . 2. (ON THE ROAD AGAIN) DOCUMENT NUMBER V1394P393-404 OCT. 1, 1970

1.ON THE ROAD AGAIN CO/OWNERS LAWN MUSIC COMPANY/ METRIC MUSIC COMPANY
REGISTRATION NUMBER EU89256 & REGISTRATION NUMBER EU98008 & EP249982 SEP-16 1968
WRITERS FLOYD JONES & ALAN WILSON
COURT DOC. # (NO. 69 CIV . 4375

MINNETTE BROWN

Minnette Brown

MICHAEL BROWN

Michael Brown

Gemini

To whom it may concern

Agreement Between Independent Administrator of The Estate of Joe Brown Michael Brown & Willie C. Cobbs Co/owners of Ruler Records. All Songs Attached 50% writers share is assigned to Michael Brown administrator of Estate of Joe Brown 50% of (Lawn Music and Frederick Music Company) [songs attached under [illegible]] Publishing is assigned to Willie C. Cobbs by Michael Brown independent administrator of Estate of Joe Brown Dated 10-9-2009 Agreement of Transfers of equal Rights between Willie C. Cobbs + Michael Brown

x Michael Brown [illegible]

x Michael Brown 10-9-2009

Exhibit C

[illegible] Willie Cobbs 10-9-2009

Gemini can make mistakes, so double-check it

On this day 10-7-2009

This Agreement Between Michael Brown & Willie Cobbs

## RULER RECORDS

Michael Brown ESTATE of Joe Brown & Willie CoBBS
(E[redacted]B.
Independent Admistrator 1958 Ruler Records

Chicago, IL

| | | | | Registration No. | |
|---|---|---|---|---|---|
| 5000 | Willie C<br>*(Willie Cobbs)* | Slow Down Baby<br>You Don't Love Me | 242<br>241 | Eu543361<br>Eu 719204 | |
| 900/1 | Willie Cobbs | Slow Down Baby<br>You Don't Love (Me) | S-242<br>M-18 | Ep216323 | Eu 719204 |
| 902/3 | Willie Cobbs | My Little Girl<br>Mistreated Blues | W-1176<br>W-11765B | | |
| 1131 | Willie Cobbs | Slow Down<br>Don't Say Goodbye,<br>*(Hoppin Bird)* | S-2981<br>S-2980 | | |
| | | Shimmy, Shimmy Walk | | Ep 161636 | |
| | | Please Don't Run<br>Please Don't Leave | | Eu731944<br>Ep170695 | |

Assignments

| | | | |
|---|---|---|---|
| J.O.B. — | Funky Monkey | V1433P251 | Dec.13, 1971 |
| J.O.B. — | On The Road Again | V1394P393-404 | Oct. 1, 1970 |
| Ruler — | You're So Hard To Please | Eu 708991 | Feb. 23, 1962 |

Michael Brown

Michael Brown

Page 14 / 26

Gemini can make mistakes, so double-check it

Dr. Michael Brown [illegible]

This Agreement Between Michael Brown & Willie Cobbs

# RULER RECORDS

Michael Brown ESTATE of Joe Brown + Willie CoBBS

Independent Administrator (Est. 1958) Ruler Records

Chicago, IL

| | | | | Registration No. | |
|---|---|---|---|---|---|
| 5000 | Willie C (Willie Cobbs) | Slow Down Baby | 242 | Eu543361 | |
| | | You Don't Love Me | 241 | Eu 719204 | |
| 900/1 | Willie Cobbs | Slow Down Baby | S-242 | | |
| | | You Don't Love (Me) | M-18 | Ep216323 | Eu 719204 |
| 902/3 | Willie Cobbs | My Little Girl | W-1176 | | |
| | | Mistreated Blues | W-11765B | | |
| 1131 | Willie Cobbs | Slow Down | S-2981 | | |
| | | Don't Say Goodbye, (Hoppin Bird) | S-2980 | | |
| | | Shimmy, Shimmy Walk | | Ep 161636 | |
| | | Please Don't Run | | Eu731944 | |
| | | Please Don't Leave | | Ep170695 | |

[illegible] + Frederick Publishing (pending) M.B. will until later

**Assignments**

| | | | |
|---|---|---|---|
| J.O.B — | Funky Monkey | V1433P251 | Dec.13, 1971 |
| J.O.B — | On The Road Again | V1394P393-404 | Oct. 1, 1970 |
| Ruler — | You're So Hard To Please | Eu 708991 | Feb. 23, 1962 |

Michael Brown

Michael Brown

Witness by: [illegible]

N-2

#14

To whom it may concern

Agreement Between Independent Administrator of The ESTATE of Joe Brown Michael Brown + Willie C. Cobbs Co/owners of Ruler Records. All Songs Attached 50% writers share is Assigned to Michael Brown administrator of Estate of Joe Brown 50% of (Alan Music Songs attached under Alan and Frederick Music Company) Publishing is assigned to Willie C. Cobbs by Michael Brown independent administrater of ESTATE of Joe Brown. Dated 10-9-2009 Agreement of Transfers of equal Rights between Willie C. Cobbs + Michael Brown

X Michael Brown 10-9-2009

Exhibit

X Michael Brown 10-9-2009

C

[illegible] X Willie C. Cobbs 10-9-2009

N-1

## ACKNOWLEDGEMENT

STATE OF Arkansas
COUNTY OF Monroe

On this 9h day of October, 2009, before me, a Notary Public, personally appeared, Willie C. Cobb abd Michael Brown, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they had so signed and executed the same, with the relinquishment and waiver of all rights of homestead exemption, statutory redemption, appraisement, curtsey and dower, for the consideration and purposes therein mentioned and set forth.

Susan D. Banks
Notary Public

My Commission expires 11/06/2012

SUSAN D. BANKS
NOTARY PUBLIC-STATE OF ARKANSAS
MONROE COUNTY
My Commission Expires 11-6-2012

Gemini can make mistakes, so double-check it

EX 2

2 of 2

# ASSIGNMENT

AGREEMENT BETWEEN WILLIE C COBBS 1426 BLUES ROAD BRINKLEY ARKANSAS 72021 , AND THE ESTATE OF JOE BROWN (INDEPENDENT ADMINISTRATOR MICHAEL BROWN. 22744 LAKESHORE DRIVE RICHTON PARK, IL.60471.

KNOW ALL MEN BY THESE PRESENTS

THAT FOR AND CONSIDERATION, RECIEPT WHEREOF IS HEREBY ACKNOWLEDGED, THE FOLLOWING PAGE UNDERSIGNED WILLIE C COBB (HEREINAFTER THE WRITER ) HEREBY BARGAINS TRANSFERS , ASSIGNS AND SETS OVER UNTO THE ESTATE OF JOE BROWN INDEPENDENT ADMINISTRATOR MICHAEL BROWN, AND EACH OF THEIR SUCCESSORS AND ASSIGNS , FOREVER AND WITHOUT LIMITATION AND FREE AND CLEAR OF ANY AND ALL RIGHTS , INTERESTS, CLAIMS AND EMCUMBRANCES,TO THE ATTACHED MUSICAL COMPOSITIONS, 50% OF THE WRITERS SHARE .OF ALL ADAPTATIONS, ARRANGEMENTS, DRAMATIZATIONS, TRANSLATIONS AND VERSIONS THEREOF , INCLUDING AMONG ALL OTHER THINGS, AND WITHOUT LIMITATIONS.
MICHAEL BROWN( INDEPENDENT ADMINISTRATOR) OF THE ESTATE OF JOE BROWN ASSIGNS TO WILLIE C COBBS 50 % OWNERSHIP OF ALL COMPOSITIONS RECORDED UNDER THE RULER RECORD COMPANY LABEL OCTOBER-10-2009,
MICHAEL BROWN (INDEPENDENT ADMINISTRATOR) OF THE ESTATE OF JOE BROWN ASSIGNS , TO WILLIE COBBS 50% OF THE PUBLISHING TO THE SONGS ATTACHED UNDER THE RULER RECORD COMPANY LABEL OWNED BY LAWN MUSIC COMPANY BY THE 1964 AGREEMENT C/O FREDERICK MUSIC COMPANY.

THIS AGREEMENT IS ACCEPTED BY MINNETTE BROWN WIDOWER OF JOE BROWN ½ OWNER OF LAWN MUSIC COMPANY ,
½ OWNER OF THE ESTATE OF JOE BROWN, J O B RECORDS, RULER RECORDS, ORIOLE RECORDS, OPERA RECORDS , ABCO RECORDS. PREVIOUS ADDRESSES, 4008 S. ELLIS AVE. CHICAGO ,IL 60605,-( 1117 WEST 59TH STREET,) CHICAGO IL 60621 , 7730 S. GREENWOOD CHICAGO , IL.
MINNETTE BROWN 27744 LAKESHORE DRIVE , RICHTON PARK ,IL. 60471

IN WITNESS WHEREOF THE ASSINORS HAS EXECUTED THIS INSTRUMENT THIS 9TH DAY OF OCTOBER 2009

MINNETTE BROWN

Minnette Brown

WITNESS
JANETTE ARCENEAUX

Janette Arceneaux

EX 3 – 1 of 2

**Department of the Treasury**
**Internal Revenue Service**
**MDP 7101-208**
**MEMPHIS,TN 37501**

In reply refer to: 0352863638
May 26, 2009 LTR 147C
94-6804755

**JOSEPH BROWN ESTATE**
**MICHAEL BROWN EX**
**4020 216TH ST**
**MATTSON IL 60443**

Taxpayer Identification Number: 94-6804755

Form(s):

Dear Taxpayer:

This letter is in response to your telephone inquiry of May 26th, 2009.

Your Employer Identification Number (EIN) is 94-6804755. Please keep this number in your permanent records. You should enter your name and your EIN, exactly as shown above, on all business federal tax forms that require its use, and on any related correspondence documents.

If you have any questions regarding this letter, please call our Customer Service Department at 1-800-829-0115 between the hours of 7:00 AM and 10:00 PM. If you prefer, you may write to us at the address shown at the top of the first page of this letter. When you write, please include a telephone number where you may be reached and the best time to call.

Sincerely,

MR.HILL
0730318
Customer Service Representative

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201

In reply refer to: 0231814005
Jan 13, 2010 LTR 147C
36-4665057

LAWN MUSIC INC
% MIKE BROWN
227 44 LAKESHORE DR
RICHTON PARK IL 60471

Taxpayer Identification Number: 36-4665057

Form(s):

Dear Taxpayer:

This letter is in response to your telephone inquiry of January 13th, 2010.

Your Employer Identification Number (EIN) is 36-4665057. Please keep this number in your permanent records. You should enter your name and your EIN, exactly as shown above, on all business federal tax forms that require its use, and on any related correspondence documents.

If you have any questions regarding this letter, please call our Customer Service Department at 1-800-829-0115 between the hours of 7:00 AM and 10:00 PM. If you prefer, you may write to us at the address shown at the top of the first page of this letter. When you write, please include a telephone number where you may be reached and the best time to call.

Sincerely,

MS. PAYNE
01-96390
Customer Service Representative

Ex 4 1 of 30

BMI®

Legal & Business Affairs
Performing Rights

July 27, 2010

Estate of Joseph Charles Brown
Michael Brown, Independent Administrator
4020 216th Street
Matteson, IL 60443

Re: Estate of Joseph Charles Brown

Dear Mr. Brown,

Thank you for the information you supplied. Enclosed please find a copy of a substitution agreement for your signature.

Please sign the copy of the agreement and return it directly to me. We will also require the completion and return of the W-9 IRS Forms, the Successor BMI Publisher Contact Information Form and the No Exceptions Form.

Upon receipt of the signed agreement, the W-9 IRS Forms, the Successor BMI Publisher Contact Information Form and the No Exceptions Form, a countersigned copy will be returned to you, and our records will be updated.

If you have any questions, please feel free to contact me at 212-220-3085. Thank you for your attention to this matter.

Sincerely,

Lynn Silverman

Lynn Silverman

Enclosures

7 World Trade Center, 250 Greenwich Street, New York, NY 10007-0030 (212) 220-3073 Fax (212) 220-4473
E-Mail: kkariolis@bmi.com

® A Registered Trademark of Broadcast Music, Inc.

BMI® 1940

BMI®

July 27, 2010

Estate of Joseph Charles Brown
Michael Brown, Independent Administrator
4020 216th St.
Matteson, Il 60443

RE: Estate of Joseph Charles Brown

Dear Mr. Brown:

This will confirm our understanding as follows:

We are entering into the agreement annexed hereto as Exhibit "A" (herein called the "basic agreement") in reliance upon the following warranties and representations:

1. You each warrant and represent:

(a) that Joseph Charles Brown, hereinafter called the "decedent", died intestate and a resident of the State of Illinois on February 7, 1976; and

(b) that Minnette Brown is the surviving spouse of the decedent; and

(c) that Michael Brown, Darnell Brown, Delores Brown and Annette Denise Brown are the adult children of the decedent; and

(d) that under the intestacy laws of Illinois, Minnette Brown as the surviving spouse is entitled to 50% of the entire estate of the decedent, and that Michael Brown, Darnell Brown, Delores Brown and Annette Denise Brown are each entitled to 12.5% of the entire estate of the decedent; and

(e) that the decedent's estate was admitted to probate by the County Department-Probate Division of the Circuit Court of Cook County, Illinois , which appointed Michael Brown Independent Administrator on May 27, 2009; and

(f) you are entitled to be paid all of the royalty assets of the decedent as representative of the estate; and

(g) that you own and control, and will during the term of the basic agreements, own and control all of the rights granted to BMI pursuant to the basic agreements with respect to all works which are embraced by the respective basic agreements; and

(h) that neither the decedent nor his estate was or is a member of any other



BMI® 1940

performing rights society; and

(i) that all debts, taxes, and expenses of any kind which are due, or might become due on behalf of the decedent or his estate has either been paid or will be paid.

2. The basic agreements shall be deemed to contain the following additions and modifications:

(a) With regard to Exhibit "A":

(i) Wherever applicable, the word "you" or any derivative thereof shall be deemed to refer to Joseph Charles Brown.

(ii) In paragraph 1 (a), the word "period" shall mean the term from January 1, 2010 to December 31, 2011, and continuing thereafter for additional terms of two (2) years each unless terminated by either party by the end of the said initial term or any additional term upon notice sent by registered, certified, or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such term.

(iii) Sub-paragraph (b) (i) of Paragraph 1 shall be deemed deleted.

(iv) Paragraph 14 shall be deemed deleted.

(b) With regard to Exhibit "B":

(i) In paragraph 1 the word "period" shall mean the term from January 1, 2010 to December 31, 2014, and continuing thereafter for additional terms of five (5) years each unless terminated by either party by the end of said initial term or any additional term or any additional term upon notice sent by registered, certified, or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such term.

3. It is agreed that Exhibits "A" and "B" shall together constitute the "basic

agreements" between us, the dates of which shall be deemed to be July 26, 2010.

4. In reliance upon the warranties and representations contained above, BMI agrees to pay you any royalties which may be due or become due on behalf of the decedent under the terms of the basic agreements until such time as the Court issues an order of distribution or other equivalent document allowing BMI to pay the heirs directly.

5. In consideration of the foregoing, you each agree, jointly and severally, to indemnify, save and hold BMI free and harmless from and against any and all creditors, heirs, assignees or successors of the decedent in connection with the aforesaid agreement or any payments to you by virtue of your warranties and representations contained herein.

Very truly yours,

BROADCAST MUSIC, INC.

By: ______________________
Gary F. Roth
Assistant Vice President

ACCEPTED AND AGREED TO:

Minnette Brown
Minnette Brown

Michael Brown
Michael Brown, Individually and as Administrator of the Estate of Joseph Charles Brown

Darnell Brown
Darnell Brown

Delores Brown
Delores Brown

Annette Brown Denise
Annette Denise Brown

x Darryl Brown
DArrYl Brown

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201

In reply refer to: 0231814005
Jan 13, 2010 LTR 147C
36-4665057

LAWN MUSIC INC
% MIKE BROWN
227 44 LAKESHORE DR
RICHTON PARK IL 60471

Taxpayer Identification Number: 36-4665057

Form(s):

Dear Taxpayer:

This letter is in response to your telephone inquiry of January 13th, 2010.

Your Employer Identification Number (EIN) is 36-4665057. Please keep this number in your permanent records. You should enter your name and your EIN, exactly as shown above, on all business federal tax forms that require its use, and on any related correspondence documents.

If you have any questions regarding this letter, please call our Customer Service Department at 1-800-829-0115 between the hours of 7:00 AM and 10:00 PM. If you prefer, you may write to us at the address shown at the top of the first page of this letter. When you write, please include a telephone number where you may be reached and the best time to call.

Sincerely,

MS. PAYNE
01-96390
Customer Service Representative

**Department of the Treasury**
**Internal Revenue Service**
**MDP 7101-208**
**MEMPHIS,TN 37501**

In reply refer to: 0352863638
May 26, 2009 LTR 147C
94-6804755

**JOSEPH BROWN ESTATE**
**MICHAEL BROWN EX**
**4020 216TH ST**
**MATTSON IL 60443**

Taxpayer Identification Number: 94-6804755

Form(s):

Dear Taxpayer:

This letter is in response to your telephone inquiry of May 26th, 2009.

Your Employer Identification Number (EIN) is 94-6804755. Please keep this number in your permanent records. You should enter your name and your EIN, exactly as shown above, on all business federal tax forms that require its use, and on any related correspondence documents.

If you have any questions regarding this letter, please call our Customer Service Department at 1-800-829-0115 between the hours of 7:00 AM and 10:00 PM. If you prefer, you may write to us at the address shown at the top of the first page of this letter. When you write, please include a telephone number where you may be reached and the best time to call.

Sincerely,

MR.HILL
0730318
Customer Service Representative

W-LEGAL

TO: BMI

FROM: Estate of Joe Brown (Lawn Music Co.

The undersigned warrants and represents that as of this date the undersigned writer's share of performing rights in all of the works on the attached list, to the extent indicated thereon, can be licensed by BMI on the writer's behalf with the following exceptions: NO EXCEPTIONS

TITLE(S)

LIST ALL TITLES YOU NO LONGER OWN, OR IF YOU STILL OWN ALL OF THEM, TO THE EXTENT INDICATED ON THE LIST, WRITE "NO EXCEPTIONS."

Dated: 2-28-2011

NAME: Joe Brown (Lawn Music) J.O.B

BY: Michael Brown

TITLE OF SIGNER Independent Administrator

11/81

BMI®

## SUCCESSOR BMI PUBLISHER CONTACT INFORMATION FORM

This form is to be used to advise BMI as to the address of record of the publishing company that you inherited

BMI requires that all publisher affiliates provide an official address of record for the publishing company. That address will become the referral address for persons who wish to contact the publisher about licensing its works and other inquiries. When a BMI publisher dies and leaves more than one heir, multiple successors must agree on the address since there can only be one address of record in BMI's files for each publisher. Also, every publisher may, but is not required to, have a contact address appear on BMI's website. That Web Address, as it is called, may either be the same as the address of record, or it may be a different address.

If one successor has a greater share of ownership than all others, BMI will use that successor's mailing address as the publishing company's address of record, unless we are advised otherwise in writing by that person. This form may be used to do so. If two or more successors have the largest equal shares, they must agree as to what the address of record will be. BMI will not update its records for payment of publisher royalties to those persons until they all agree as to what will be the publisher's address of record and advise BMI using this form.

BMI will not establish a Web Address for the company unless the addressee of record requests in writing for BMI to do so. This form may be used.

NAME OF YOUR BMI PUBLISHING COMPANY LAWN Music Company/C/O Frederick Music C

IF YOU ARE THE *ONLY OR LARGEST PERCENTAGE HEIR*, STATE YOUR NAME Minnette Brown, Michael Brown

Do you want to use an address of record different than your address on your BMI agreement? ☑ No ☐ Yes

If Yes, what should the company's address of record be? 441 Talala ST

Park Forest IL [illegible] 60466

Do you want that address of record to be a Web Address also? ☒ Yes ☐ No

If No, do you want ☐ no Web address ☐ a different Web Address which is

Contact phone number 708-248-7270 Contact Fax Number 708-248-5462

Contact e-mail address lawnmusic1947@yahoo.com

Your signature: Michael Brown, Minnette Brown

Today's Date: ~~11-15-2010~~ 2-28-2011

IF YOU ARE *ONE OF TWO OR MORE HEIRS WHO HAVE AN EQUAL PERCENTAGE OF OWNERSHIP LARGER THAN ANYONE ELSE'S*, STATE YOUR NAME Minnette Brown, Michael Brown

What address of record for the company have you and the other equal heirs agreed upon? 441 TAlala ST

PARK Forest IL 60466

*(All of the largest equal percentage heirs also must indicate the above address on their signed copy of this form)*

If the above address is yours, do you want that address of record to be a Web Address also? ☑ Yes ☐ No

If No, do you want ☐ no Web address ☐ a different Web Address which is

Contact phone number 708-248-7270 Contact Fax Number 708-248-7270

Contact e-mail address lawnmusic1947@yahoo.com

Your signature: Michael Brown

Today's Date: ~~11-15-2010~~ 2-28-2011

Form **W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

**Give form to the requester. Do not send to the IRS.**

Print or type
See Specific Instructions on page 2.

Name (as shown on your income tax return)
JOSEPH Brown ESTATE, Michael Brown EX

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶
☐ Other (see instructions) ▶
☐ Exempt payee

Address (number, street, and apt. or suite no.)
441 Talala ST.

Requester's name and address (optional)

City, state, and ZIP code
Park Forest IL 60466

List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

or

**Employer identification number**
74 6804755

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here** Signature of U.S. person ▶ Michael Brown Date ▶ 2-28-2011

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
- An estate (other than a foreign estate), or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

- The U.S. owner of a disregarded entity and not the entity.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Disregarded entity not owned by an individual | The owner |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

Call the IRS at 1-800-829-1040 if you think your identity has been used inappropriately for tax purposes.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS personal property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.consumer.gov/idtheft* or 1-877-IDTHEFT(438-4338).

Visit the IRS website at *www.irs.gov* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

- The U.S. grantor or other owner of a grantor trust and not the trust, and
- The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.
2. The treaty article addressing the income.
3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.
4. The type and amount of income that qualifies for the exemption from tax.
5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

***Example.*** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,
2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),
3. The IRS tells the requester that you furnished an incorrect TIN,
4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or
5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** Check the "Limited liability company" box only and enter the appropriate code for the tax classification ("D" for disregarded entity, "C" for corporation, "P" for partnership) in the space provided.

For a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

For an LLC classified as a partnership or a corporation, enter the LLC's name on the "Name" line and any business, trade, or DBA name on the "Business name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2).

2. The United States or any of its agencies or instrumentalities.

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities.

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation.

7. A foreign central bank of issue.

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States.

9. A futures commission merchant registered with the Commodity Futures Trading Commission.

10. A real estate investment trust.

11. An entity registered at all times during the tax year under the Investment Company Act of 1940.

12. A common trust fund operated by a bank under section 584(a).

13. A financial institution.

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 7[2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt payees, see *Exempt Payee* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

BMI®

EXHIBIT B

THIS PAGE TO BE COMPLETED BY BMI.
REMEMBER TO SIGN ON PAGE NINE.

AGREEMENT made on between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and a doing business as ("Publisher"), whose address is

WITNESSETH:

1. The term of this agreement shall be the period from [TO BE COMPLETED BY BMI] to [TO BE COMPLETED BY BMI], and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2. As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3. Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4. Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

THIS PAGE INTENTIONALLY LEFT BLANK

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6. In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

B. The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

13. Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15. Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17. BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (l) and A (2) of this paragraph 17.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (l) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18. In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19. Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20. All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21. Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22. Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's postal or electronic ("e-mail") address, or facsimile number. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last postal or electronic address or facsimile number so furnished by Publisher.

23. This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24. Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25. Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26. This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27. In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28. Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement. All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC

By ..........................................................................................
Vice President

"PUBLISHER"

By Michael Brown .......................... Michael Brown Independent Administrator
(Authorized Signatory) (Print Name and Title of Signer)

**If your company structure is a PARTNERSHIP, all other partners must sign below:**

By ..........................................................................................
Partner Printed Name

By ..........................................................................................
Partner Printed Name

By ..........................................................................................
Partner Printed Name

By ..........................................................................................
Partner Printed Name

By ..........................................................................................
Partner Printed Name

THIS PAGE INTENTIONALLY LEFT BLANK

EXHIBIT A

BMI®

Broadcast Music, Inc., 320 West 57th Street, New York, NY 10019-3790

Date:

Dear

The following shall constitute the agreement between us:

1. As used in this agreement:

(a) The word "Period" shall mean the term from [TO BE COMPLETED BY BMI] to [TO BE COMPLETED BY BMI] and continuing thereafter for additional terms of two (2) years each unless terminated by either party at the end of said initial term or any additional term, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such term.

(b) The words "Work" or "Works" shall mean:

(i) All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) composed by you alone or with one or more co-writers during the Period; and

(ii) All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) composed by you alone or with one or more co-writers prior to the Period, except those in which there is an outstanding grant of the right of public performance to a person other than a publisher affiliated with BMI.

2. You agree that:

(a) Within ten (10) days after the execution of this agreement you will furnish to us a completed work registration form available in blank from us with respect to each Work heretofore composed by you which has been published in printed copies or recorded commercially or synchronized commercially with film or tape or which is being currently performed or which you consider as likely to be performed.

(b) In each instance that a Work for which a work registration form has not been submitted to us pursuant to subparagraph 2(a) is published in printed copies or recorded commercially or in synchronization with film or tape or is considered by you as likely to be performed, whether such Work is composed prior to the execution of this agreement or hereafter during the Period, you will promptly furnish to us a completed work registration form with respect to each such Work.

(c) If requested by us in writing, you will promptly furnish to us (i) a legible lead sheet or other written or printed copy of a Work, (ii) if such Work has been or shall be synchronized with or otherwise used in connection with a motion picture or television film or tape, a cue sheet showing the title, writers, publishers and nature and duration of the use of the Work in such film or tape, (iii) a copy of a commercial recording of the Work and (iv) a copy of your agreement with the publisher of the Work.

3. The submission of each work registration form pursuant to paragraph 2 shall constitute a warranty and representation by you that all of the information contained thereon is true and correct and that no performing rights in such Work have been granted to or reserved by others except as specifically set forth therein in connection with Works heretofore written or co-written by you.

4. Except as otherwise provided herein, you hereby grant to us for the Period:

(a) All the rights that you own or acquire publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

*THIS PAGE INTENTIONALLY LEFT BLANK*

(b) The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (i) with motion pictures intended primarily for theatrical exhibition or (ii) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

(c) The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

5. Notwithstanding the provisions of subparagraph 4(a):

(a) The rights granted to us by subparagraph 4(a) shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

(b) You, together with all the publishers and your co-writers, if any, shall have the right jointly, by written notice to us, to exclude from the grant made by subparagraph 4(a) performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (i) a score originally written for or performed as part of a theatrical or television film, (ii) a score originally written for or performed as part of a radio or television program, or (iii) the original cast, soundtrack or similar album of a dramatic or dramatico-musical work.

(c) You, the publishers and/or your co-writers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, we are given written notice thereof and a copy of the license is supplied to us.

6. (a) As full consideration for all rights granted to us hereunder and as security therefor, we agree to pay to you, with respect to each of the Works in which we obtain and retain performing rights during the Period:

(i) For radio and television performances of a Work in the United States, its territories and possessions, amounts calculated pursuant to our then current standard practices upon the basis of the then current performance rates generally paid by us to our affiliated writers for similar performances of similar compositions. The number of performances for which you shall be entitled to payment shall be estimated by us in accordance with our then current system of computing the number of such performances.

You acknowledge that we license performances of the Works of our affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the Period we shall establish a system of separate payment for performances by means other than radio and television, we shall pay you upon the basis of the then current performance rates generally paid by us to our other affiliated writers for similar performances of similar compositions.

(ii) In the case of a Work composed by you with one or more co-writers, the sum payable to you hereunder shall be a pro rata share, determined on the basis of the number of co-writers, unless you shall have transmitted to us a copy of an agreement between you and your co-writers providing for a different division of payment.

(iii) Monies received by us from any performing rights licensing organization outside of the United States, its territories and possessions, which are designated by such performing rights licensing organization as the author's share of foreign performance royalties earned by your Works after the deduction of our then current handling charge applicable to our affiliated writers and in accordance with our then current standard practices of payment for such performances.

(b) Notwithstanding the provisions of subparagraph 6(a), we shall have no obligation to make payment hereunder with respect to (i) any performance of a Work which occurs prior to the date on which we have received from you all of the information and material with respect to such Work which is referred to in paragraphs 2 and 3, or (ii) any performance of a Work as to which a direct license as described in subparagraph 5(c) has been granted by you, your co-writers, if any, or the publishers, or (iii) any performance for which no license fee shall be collected by us, or (iv) any performance of a Work which you claim was either omitted from or miscalculated on a royalty statement and for which we shall not have received written notice from you of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

7. In accordance with our then current standard practices, we will furnish periodic statements to you during each year of the Period showing the monies due pursuant to subparagraph 6(a). Each such statement shall be accompanied by payment of the sum thereby shown to be due you, subject to all proper deductions, if any, for taxes, advances or amounts due BMI from you.

8. (a) Nothing in this agreement requires us to continue to license the Works subsequent to the termination of this agreement. In the event that we continue to license your interest in any Work, however, we shall continue to make payments to you for such Work for so long as you do not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to our then current standard practices upon the basis of the then current performance rates generally paid by us to our affiliated writers for similar performances of similar compositions. You agree to notify us by registered or certified mail of any grant or purported grant by you directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if you fail so to inform us thereof and we make payments to you for any period after the making of any such grant or purported grant, you agree to repay to us all amounts so paid by us promptly with or without demand by us. In addition, if we inquire of you by registered or certified mail, addressed to your last known address, whether you have made any such grant or purported grant and you fail to confirm to us by registered or certified mail within thirty (30) days of the mailing of such inquiry that you have not made any such grant or purported grant, we may, from and after such date, discontinue making any payments to you.

(b) Our obligation to continue payment to you after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon our receipt in the United States of payments designated by foreign performing rights organizations as your share of foreign performance royalties earned by your Works. Payment of such foreign royalties shall be subject to deduction of our then current handling charge applicable to our affiliated writers and shall be in accordance with our then current standard practices of payment for such performances.

9. In the event that we have reason to believe that you will receive, are entitled to receive, or are receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of your Works during a period when such Works were licensed by us pursuant to this agreement, we shall have the right to withhold payment for such performances from you until receipt of evidence satisfactory to us that you were not or will not be so paid by such other organization. In the event that you were or will be so paid or do not supply such evidence within twelve (12) months from the date of our request therefor, we shall be under no obligation to make any payment to you for performances of such Works during such period.

10. (a) In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to you prior to the effective date of such termination, there remains an unearned balance of advances paid to you by us or any other indebtedness owed to BMI by you, such termination shall not be effective until the close of the calendar quarterly period during which (i) you shall repay such unearned balance of advances or indebtedness, or (ii) you shall notify us by registered or certified mail that you have received a statement rendered by us at our normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by us.

(b) The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of your Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

11. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to you by BMI pursuant to the provisions of this agreement.

12. (a) You warrant and represent that you have the right to enter into this agreement; that you are not bound by any prior commitments which conflict with your commitments hereunder; that each of the Works, composed by you alone or with one or more co-writers, is original; and that the exercise of the rights granted by you herein will not constitute an infringement of copyright or violation of any other right of, or unfair competition with, any person, firm or corporation. You agree to indemnify and hold harmless us, our licensees, the advertisers of our licensees and their respective agents, servants and employees from and against any and all loss or damage resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by you in this agreement.

(b) Upon notification to us or any of the other parties herein indemnified of a claim with respect to any of the Works, we shall have the right to withhold payment of all sums which become due pursuant to this agreement or any modification thereof and/or

to exclude such Work from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

13. (a) We shall have the right, upon written notice to you, to exclude from this agreement, at any time, any Work which in our opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

(b) In the case of Works which in our opinion are based on compositions in the public domain, we shall have the right, upon written notice to you, either (i) to exclude any such Work from this agreement, or (ii) to classify any such Work as entitled to receive only a fraction of the full credit that would otherwise be given for performances thereof.

(c) In the event that any Work is excluded from this agreement pursuant to subparagraph 12(b) or subparagraph 13 (a) or (b), all rights in such Work shall automatically revert to you ten (10) days after the date of our notice to you of such exclusion. In the event that a Work is classified for less than full credit under subparagraph 13 (b)(ii), you shall have the right, by giving notice to us, within ten (10) days after the date of our notice advising you of the credit allocated to the Work, to terminate our rights therein, and all rights in such Work shall thereupon revert to you.

14. In each instance that you write, or are employed or commissioned by a motion picture producer to write, during the Period, all or part of the score of a motion picture intended primarily for exhibition in theaters, or by the producer of a musical show or revue for the legitimate stage to write, during the Period, all or part of the musical compositions contained therein, we agree, on request, to advise the producer of the film that such part of the score as is written by you may be performed as part of the exhibition of said film in theaters in the United States, its territories and possessions, without compensation to us, or to the producer of the musical show or revue that your compositions embodied therein may be performed on the stage with living artists as part of such musical show or revue, without compensation to us. In the event that we notify you that we have established a system for the collection of royalties for performance of the scores of motion picture films in theaters in the United States, its territories and possessions, we shall no longer be obligated to take such action with respect to motion picture scores.

15. You make, constitute and appoint us, or our nominee, your true and lawful attorney, irrevocably during the Period, in our name or that of our nominee, or in your name, or otherwise, in our sole judgment, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in our sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by you hereunder, and to recover damages in respect to or for the infringement or other violation of said rights, and in our sole judgment to join you and/or others in whose names the copyrights to any of the Works may stand; to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works, provided that any action or proceeding commenced by us pursuant to the provisions of this paragraph shall be at our sole expense and for our sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires us to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with us, who you claim may be infringing your Works or otherwise violating the rights granted by you hereunder. In addition, you understand and agree that the licensing by us of any musical compositions which you claim may be infringing your Works or otherwise violating the rights granted by you hereunder, shall not constitute an infringement of your Works on our part.

16. BMI shall have the right, in its sole discretion, to terminate this agreement on at least thirty (30) days' notice by registered or certified mail if you, your agents, employees or representatives, directly or indirectly, solicit or accept payment from writers for composing music for lyrics or writing lyrics to music or for reviewing, publishing, promoting, recording or rendering other services connected with the exploitation of any composition, or permit use of your name or your affiliation with us in connection with any of the foregoing. In the event of such termination no payments shall be due to you pursuant to paragraph 8.

17. No monies due or to become due to you shall be assignable, whether by way of assignment, sale or power granted to an attorney-in-fact, without our prior written consent. If any assignment of such monies is made by you without such prior written consent, no rights of any kind against us will be acquired by the assignee, purchaser or attorney-in-fact.

18. In the event that during the Period (a) mail addressed to you at the last address furnished by you pursuant to paragraph 22 shall be returned by the post office, or (b) monies shall not have been earned by you pursuant to paragraph 6 for a period of two consecutive years or more, or (c) you shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by you pursuant to paragraph 22 and, in the case of your death, to the representative of your estate, if known to BMI. If you failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate you without success, BMI shall have the right to terminate this agreement pursuant to this paragraph by regular

first-class U.S. mail, in lieu of the means otherwise specified. In the event of such termination no payments shall be due to you pursuant to paragraph 8.

19. You acknowledge that the rights obtained by you pursuant to this agreement constitute rights to payment of money and that during the Period we shall hold title to the performing rights granted to us hereunder. In the event that during the Period you shall file a petition in bankruptcy, such a petition shall be filed against you, you shall make an assignment for the benefit of creditors, you shall consent to the appointment of a receiver or trustee for all or part of your property, or you shall institute or shall have instituted against you any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, we shall retain title to the performing rights in all Works the rights to which are granted to us hereunder and shall subrogate your trustee in bankruptcy or receiver and any subsequent purchasers from them to your right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20. (a) You hereby authorize us to negotiate for and collect royalties or monies to which you may become entitled as a writer pursuant to the Audio Home Recording Act of 1992 and/or any amendments thereto or substitutions therefor and, to the extent possible, collect for and distribute to you royalties arising from or as compensation for home recording in countries outside the United States, its territories and possessions. This authorization with respect to royalties and monies under the Audio Home Recording Act of 1992 may be revoked by you at the end of any calendar year on prior written notice by you to us by registered or certified mail. Such revocation shall be effective beginning with the calendar year subsequent to the time of notice and shall in no way affect the Period of this agreement with respect to any of the other rights granted to BMI by you hereunder.

(b) We agree to distribute to you royalties and monies collected by us pursuant to the authorization granted in subparagraph 20(a), pursuant to our then prevailing practices, including deduction of our expenses therefor.

21. All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of us shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one of us, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either of us may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on both of us and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

22. You agree to notify our Department of Writer/Publisher Administration promptly in writing of any change in your postal or electronic ("e-mail) address, or facsimile number. Any notice sent to you pursuant to the terms of this agreement shall be valid if addressed to you at the last postal or electronic address or facsimile number so furnished by you.

23. This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24. You acknowledge that the relationship between you and us which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25. You authorize the inclusion of your name, likeness and biographical information in publicly distributed material relating to your association with us.

26. This agreement constitutes the entire agreement between you and us, cannot be changed except in a writing signed by you and us and shall be governed and construed pursuant to the laws of the State of New York.

27. In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28. Any prior agreements, as modified, between you and us are canceled and superseded as of the effective date of this agreement. All works that were embraced by any prior agreement between you and us and in which no other licensing organization controls your performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to you by us or unpaid indebtedness owed to us by you shall be deemed to be recoupable by us from any monies which become payable to you pursuant to this agreement and any extensions, renewals or modifications.

Very truly yours,

| BROADCAST MUSIC, INC. | ACCEPTED AND AGREED TO: |
| --- | --- |
| By ........................................ Vice President | Michael Brown ........ (Signature) |
| | Michael Brown ........ (Print name) |

**THE FOLLOWING INFORMATION IS REQUIRED FOR ALL SONGWRITERS/COMPOSERS UNDER THE AGE OF 18:**

| | |
| --- | --- |
| ........................................ | ........................................ |
| (Signature of Parent/Legal Guardian)-<u>CIRCLE ONE</u> | (Printed Name of Parent/Legal Guardian) |

*THIS PAGE INTENTIONALLY LEFT BLANK*

Exh 45 Page 2

# Popular Songwriter's Contract

AGREEMENT entered into this 28th day of January, 19 71
by and between LAWN MUSIC COMPANY a Chicago company, hereinafter designated as the PUBLISHER,
and Willie C. Cobbs author and/or composer,
hereinafter jointly designated as the COMPOSER.

WITNESSETH:

1. The COMPOSER hereby sells, assigns, tranfers and delivers to the PUBLISHER, its successors and assigns, the original musical composition written and composed by Willie C. Cobbs, at present entitled "SLOW DOWN, BABY" & "HOPPIN' BIRD" which title may be changed by the PUBLISHER; including the title, words and music thereof, and all rights therein; and all copyrights and the rights to secure copyrights and any extensions and renewals of copyrights in the same and in any arrangements and adaptations thereof, throughout the world; and any and all other rights that the COMPOSER now has or to which he may be entitled or that he hereafter could or might secure with respect to this composition, if these presents had not been made, throughout the world; and to have and to hold the same absolutely unto the PUBLISHER its successors and assigns.

2. The COMPOSER hereby covenants, represents and warrants that the composition hereby sold is an original work and that neither said work nor any part thereof infringes upon the title or the literary or musical property or the copyright in any other work, and that he is the sole writer and composer and the sole owner thereof and of all the rights therein, and has not sold, assigned, set over, transferred, hypothecated or mortgaged any right, title or interest in or to the said composition or any part thereof, or any of the rights herein conveyed, and that he has not made or entered into any contract or contracts with any other person, firm or corporation whomsoever, affecting said composition or any right, title or interest therein, or in the copyright thereof, and that no person, firm or corporation other than the COMPOSER has or has had claims, or has claimed any right, title or interest in or to said work or any part thereof or any use thereof or any copyright therein, and that said work has never been published, and that the COMPOSER has full right, power and authority to make this present instrument of sale and transfer.

3. In consideration of this agreement, the PUBLISHER agrees to pay the COMPOSER as follows:

(a) An advance of in hand paid, receipt of which is hereby acknowledged; or any other sum heretofore or hereafter advanced to the COMPOSER, which total sums shall be deductible from any payments hereafter becoming due to the COMPOSER under this agreement.

(b) A royalty of 5 cents per copy on all regular piano copies sold and paid for in the United States of America.

(c) A royalty of 5 cents per copy on any form of orchestration thereof sold and paid for in the United States of America.

(d) A royalty of 10% for each use of the lyrics and music together, in any song book, song sheet, folio or similar publication containing at least five musical compositions.

(e) For purposes of royalty statements, if a composition is printed and published in the United States, as to copies and rights sold in Dominion of Canada, revenue therefrom shall be considered as of domestic origin. If, however, the composition is printed by a party other than the PUBLISHER in the Dominion of Canada, revenue therefrom shall be considered as originating in a foreign country.

(f) An amount equal to 50 % of all net receipts of the PUBLISHER in respect of any license issued authorizing the manufacture of the parts of instruments serving to mechanically reproduce the said composition, or to use the said composition in synchronization with sound motion pictures, or to reproduce it upon so called "electrical transcriptions" for broadcasting purposes; and of any and all net receipts of the PUBLISHER from any other source or right now known or which may hereafter come into existence.

(g) A royalty of 50 % of all net sums received by the PUBLISHER on regular piano copies and/or orchestrations thereof, and for the use of said composition in any folio or composite work, sold and paid for in any foreign country.

(h) In the event that the said composition shall not now have lyrics, and lyrics are added to the said composition, the above royalties shall be divided equally between the COMPOSER and the other writers and composers.

4. It is specifically understood and agreed that the intention of this agreement is not, and the COMPOSER shall not be entitled to receive any part of the monies received by the PUBLISHER from the American Society of Composers, Authors and Publishers, or any other collecting agency from which the PUBLISHER shall receive payments for the use of said musical composition in all countries of the world.

5. It is agreed that no royalties are to be paid for professional copies, copies disposed of as new issues, copies distributed for advertising purposes, or lyrics or music separately printed in any folio, book, newspaper, song sheet, lyric folio or magazine, or any other periodical, except as above set forth. It is also distinctly understood that no royalties are payable on consigned copies unless paid for, and not until such time as an accounting therefor can properly be made.

6. The PUBLISHER agrees that it will render to the COMPOSER semi-annually on or about the 15th days of February and August of each year, a statement showing all sales and royalties earned by the said COMPOSER to the preceding December 31st and June 30th and will pay to him at the same time all royalties then due and owing.

7. The COMPOSER hereby expressly grants and conveys to the PUBLISHER the copyright of the aforesaid composition, with renewals, and with the right to copyright and renew the same, and the right to secure all copyrights and renewals of copyright and any and all rights therein that the COMPOSER may at any time be entitled to, and agrees to sign any and all other papers which may be required to effectuate this agreement. And the COMPOSER does hereby irrevocably authorize and appoint the PUBLISHER, its successors or assigns, his attorneys and representatives in their name or in his name to take and do such actions, deeds and things and make, sign, execute, acknowledge and deliver all such documents as may from time to time be necessary to secure the renewals and extensions of the copyright in the aforesaid composition, and to assign to the PUBLISHER, its successors and assigns, said renewal copyrights and all rights therein for the term of such renewals and extensions and the COMPOSER agrees upon the expiration of the first term of any copyright in the aforesaid composition in this or in any contract, to do, make, execute, acknowledge and deliver, or to procure the due execution, acknowledgment and delivery to the PUBLISHER, of all papers necessary in order to secure to it the renewals and extension of all copyrights in said compositions and all rights therein for the terms of such renewals and extensions.

8. The PUBLISHER agrees to publish the said musical composition in saleable form within one year after the receipt of lead sheet of the said composition. Should it fail to do so, the COMPOSER shall have the right, in writing, by registered mail, to demand the return of such unpublished composition, whereupon the PUBLISHER must within sixty days after receipt of such notice either publish the said composition, in which event this agreement shall remain in full force and effect, or upon failure so to publish, all rights of any and every nature granted to the PUBLISHER herein in connection with the said unpublished composition shall revert to and become the property of the COMPOSER and shall be reassigned to him.

In connection with the foregoing it is distinctly understood and agreed that if the PUBLISHER shall secure a commercial phonograph recording, or an electrical transcription, or a synchronization in a motion picture, of the said composition; such recording, transcription or synchronization shall, for the purposes of this agreement, be deemed publication by the PUBLISHER.

9. The COMPOSER agrees that he will not transfer nor assign this agreement nor any interest therein nor any sums that may be or become due hereunder without the written consent of the PUBLISHER first hereon endorsed, and no purported assignment or transfer in violation of this restriction shall be valid to pass any interest to the assignee or transferee.

10. The COMPOSER hereby authorized the PUBLISHER at its absolute discretion and at the COMPOSER'S sole expense to employ attorneys and to institute or defend any action or proceeding and to take any other proper steps to protect the right, title and interest of the PUBLISHER in and to the above entitled composition and every portion thereof acquired from the COMPOSER pursuant to the terms hereof and in that connection to settle, compromise or in any other manner dispose of any matter, claim, action, or proceeding and to satisfy any judgment that may be rendered and all of the expense so incurred and other sums so paid by the PUBLISHER the COMPOSER hereby agrees to pay to the PUBLISHER on demand, further authorizing the PUBLISHER, whenever in its opinion its right, title or interest to any of the writer's composition are questioned or there is a breach of any of the covenants, warranties or representations contained in this contract or in any other similar contract heretofore or hereafter entered into between the PUBLISHER and the COMPOSER, to withhold any and all royalties that may be or become due to the COMPOSER pursuant to all such contracts until such question shall have been settled or such breach repaired, and to apply such royalties to the repayment of all sums due to the publisher hereunder.

11. The term "COMPOSER" shall be understood to include all the authors and composers of the musical composition above referred to. If there be more than one, the covenants herein contained shall be deemed to be both joint and several on the part of the writers and composers and the royalties hereinabove specified to be paid to the COMPOSER shall, unless a different division of royalty be specified, be due to all the writers and composers collectively, to be paid by the PUBLISHER in equal shares to each. This agreement may be executed by writers and composers in several counterparts.

Ex. 5 2 of 2

12. All questions and differences whatsoever which may at any time hereafter arise between the parties hereto touching these presents or the subject matter thereof, or arising out of or in relation thereto, and whether as to construction or otherwise, shall be referred to arbitration under the provisions and the supervision of the American Arbitration Association.

13. This agreement contains the entire understanding between the parties, and all of its terms, conditions and covenants shall be binding upon and shall inure to the benefit of the respective parties and their heirs, successors and assigns. No modification or waiver hereunder shall be valid unless the same is in writing and is signed by the parties hereto.

14.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

Martha Brown (Jackson)
Witness

By Joe Brown

Witness

Composer Willie C Cobbs

Address 10417 S. Morgan

Witness

Composer

Address

Witness

Composer

Address

Ex 6 1 of 2

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# COMMERCIAL ARBITRATION RULES DEMAND FOR ARBITRATION

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐ There is no additional administrative fee for this service.

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

Name of Respondent: Willie C. Cobbs

Address:

| | | |
|---|---|---|
| City: | State: Select... | Zip Code: |
| Phone No.: | Fax No.: | |

Email Address:

Name of Representative (if known): Phillip Cobbs

Name of Firm (if applicable):

Representative's Address: 1285 Trafalgar Dr.

| | | |
|---|---|---|
| City: South Haven | State: Mississippi | Zip Code: 38677 |
| Phone No.: 901-230-3650 | Fax No.: | |

Email Address:

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

Breach of Contract, Willie C. Cobbs changed the publishing to his daughters name Latosha Publishing in 1994
Willie C. Cobbs assigned all the rights to the Musical Composition to Embassy Music Company and Katrina Publishing in 1997 owned by Lawn Music Company and recorded in 1971 as Ruler 900. Our Record Label.

Dollar Amount of Claim: $ 300.000 to less than 500.000

Other Relief Sought: ☐ Attorneys Fees ☐ Interest ☐ Arbitration Costs ☐ Punitive/Exemplary
☑ Other: Accounting for Lawn Music Publishing share collected by Katrina Music and Music Sales Corporation and the 50% writers share

Amount enclosed: $ 1,575.00

In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Intellectual property, Musical compositions and Sound recordings,

Hearing locale:

*(check one)* ☑ Requested by Claimant ☐ Locale provision included in the contract

***Please visit our website at www.adr.org/support to file this case online.***
***AAA Customer Service can be reached at 800-778-7879.***

Ex 6 2022

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# COMMERCIAL ARBITRATION RULES
# DEMAND FOR ARBITRATION

| | | |
|---|---|---|
| Estimated time needed for hearings overall: hours or 70 days | | |
| Type of Business:<br>Claimant: Music Publishing and record company Respondent: Artist, Performer | | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?<br>no | | |
| Signature (may be signed by a representative):<br>Michael Brown | Date:<br>09/14/2022 | |
| Name of Claimant: Lawn Music Company/ Joe Brown | | |
| Address (to be used in connection with this case): 4827 Riviera Dr. | | |
| City: Monee | State: Illinois | Zip Code: 60449 |
| Phone No.: 708-539-4045 | Fax No.: | |
| Email Address: lawnmusic1947@yahoo.com | | |
| Name of Representative: Michael Brown | | |
| Name of Firm (if applicable): Lawn Music Company | | |
| Representative's Address: 4827 Riviera Dr. | | |
| City: Monee | State: Illinois | Zip Code: 60449 |
| Phone No.: 708-539-4045 | Fax No.: | |
| Email Address: lawnmusic1947@yahoo.com | | |
| To begin proceedings, **please file online at www.adr.org/fileonline**. You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee. | | |

EX 7 1 of 2

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
|---|
| 24-May-2023 |
| **Balance Currently Due** |
| $7,975.00 |
| **Case #** |
| 01-22-0003-7209-1-PM |

Case Manager: Pro Se Manager 2
ProSeManager2@adr.org
**Pay PIN:** 11919642

# Summary Invoice/Statement

Michael Brown
Lawn Music Company
4827 Riviera Drive
Monee, IL 60449

**Representing:** **Lawn Music Company**

Re: Lawn Music Company
Vs.
Willie C. Cobbs

| Statement Date | Case # | Previous Balance | Credits/Cancellations | New Charges | Statement Balance |
|---|---|---|---|---|---|
| 24-May-2023 | 01-22-0003-7209 | $0.00 | $0.00 | $7,975.00 | $7,975.00 |

| Bill Line Date | Bill Line # | Description | Amount | Credits/ Cancellations | Balance | Due Date |
|---|---|---|---|---|---|---|
| 08-May-2023 | 13702136 | Arbitrator's Compensation | $4,125.00 | $0.00 | $4,125.00 | 08-May-2023 |
| 01-May-2023 | 13696422 | Final Fee | $3,850.00 | $0.00 | $3,850.00 | 01-May-2023 |
| 02-Mar-2023 | 13650810 | Opposing Party's Share of the Neutral Compensation Deposit | $750.00 | $750.00 | $0.00 | 02-Mar-2023 |
| 19-Jan-2023 | 13619567 | Arbitrator's Compensation | $750.00 | $750.00 | $0.00 | 19-Jan-2023 |
| 23-Nov-2022 | 13584969 | Proceed Fee | $3,300.00 | $3,300.00 | $0.00 | 23-Nov-2022 |
| 19-Sep-2022 | 13538135 | Initial Administrative Fee | $2,200.00 | $2,200.00 | $0.00 | 19-Sep-2022 |

| Statement Balance | Balance Currently Due |
|---|---|
| $7,975.00 | $7,975.00 |

**Corporate Address and Tax ID:** American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: 13-0429745

Ex 7 2023

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
| --- |
| 24-May-2023 |
| Balance Currently Due |
| $7,975.00 |
| Case # |
| 01-22-0003-7209-1-PM |

Case Manager: Pro Se Manager 2
ProSeManager2@adr.org
**Pay PIN:** 11919642

# Payment Options

## Paying by Credit Card or eCheck

To pay with a credit card or eCheck online, go to www.adr.org, click on "***File or Access your Case***" and then select "***Quick Pay an Invoice***" and use this **Pay PIN: 11919642**. Please note that, beginning October 2022, where permitted by law, a 3.5% processing fee will be assessed on payments made by credit card; all such processing fees are non-refundable, regardless of whether AAA fees or compensation or expense deposits are later refunded in full or in part. Please note that we no longer accept the American Express card. There is no processing fee for payments made by echeck or debit cards.

## Wire Transfer

As information transmitted by the bank is often truncated due to limited space, please email your reference information (Case #/Bill Line #/Program #/Party Name) with the date and amount of your wire, to ensure that your payment is credited promptly and correctly (e.g. 011400021841 P1 or #1234567 P2 or EDU1234). Please email as follows:

For active cases: send to your AAA case representative and corpfinance@adr.org
For new filings (where your case number is not known): send to casefiling@adr.org and corpfinance@adr.org

FOR WIRES / ACH / EFT

**Name of Bank:** Wells Fargo Bank
**Address:** 150 East 42nd Street, 24th FL., New York, NY 10017, USA
**Account Name:** AAA/American Arbitration Association
**Account Number:** 2000017952068
**ABA/Transit Number:** 121000248
**Reference:** Case # and Bill Line #/Party Name; or Program # (as applicable)
**Swift Code/BIC:** WFBIUS6S

Note: Please take steps to ensure that your bank does in fact wire the entire amount to our account. From time to time, certain banks will keep a portion of the wire transfer for their own service fee, leaving a balance due to the AAA/ICDR.

## Paying by Check

Please return this page with your payment (please indicate the Case # on the check) to:

13727 Noel Road
Suite 1025
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

P.O. Box 19609
Johnston, RI 02919

May 3, 2023

Michael Brown
Lawn Music Company
4827 Riviera Drive
Monee, IL 60449
Via Email to: lawnmusic1947@yahoo.com

Phillip Cobbs
1285 Trafalgar Drive
South Haven, MS 38677
Via Certified Mail

Case Number: 01-22-0003-7209

Lawn Music Company
-vs-
Willie C. Cobbs

Dear Parties:

This will confirm a preliminary hearing in the above matter was held on April 28, 2023, and the following arrangements were made:

A preliminary scheduling call as held today. Michael Brown appeared for Claimant. No one appeared for Respondent.

1. Respondent is to provide to Claimant within 30 days ( on or before May 28, 2023) all written documents or material ( including emails and other electronic documents) relating to any money or other consideration it has received from sale or other use any of Willie C. Cobbs music, whether as a writer, publisher or otherwise, including, but not limited to, any from BMI, Harry Fox or Embassy Music.
2. Claimant will provide to you/AAA the email address he has for Phillip Cobbs;
3. The matter is set for a final hearing by Zoom on June 12, 2023 at 10 am central time, as set forth on the attached Notice of Hearing.

<u>The AAA does not require a set of exhibits for our file.</u>

This case will be administered by facilitating the exchange of appropriate written documents through the AAA. Please electronically submit all correspondence to the undersigned for transmittal to the Arbitrator(s) copying the other party.

The parties are encouraged to utilize our online case management service referred to as AAA WebFile®. WebFile® provides parties a convenient way to manage their case online. Using our online case management service, parties have access to important case related information and activities such as, filing a new case, managing an existing case, viewing upcoming conference calls and hearings, viewing and uploading correspondence and case documents, making payments, and many other case related activities. If you have not already done so, please navigate to our website and register for AAA WebFile® at www.adr.org. The undersigned will determine who should receive viewing privileges and grant access accordingly.

EX 8 — 2 OF 3

Each party will be billed as a deposit to cover the arbitrator's anticipated compensation and expenses for this matter. This amount was determined by the arbitrator(s) and based on the overall case schedule that the parties arrived at during the Preliminary Hearing. Payment is to be received by the AAA no later than **May 26, 2023**. You will be receiving an automatically generated invoice within two weeks and every thirty days thereafter, until the balance is paid. Should you need a copy immediately to facilitate payment please contact the undersigned. This will also confirm our discussion that we will be informing the arbitrator(s) of the amount on deposit as of the due date. If full deposits are not on hand, the arbitrator(s) may suspend this proceeding pending the parties' compliance with the Commercial Arbitration Rules.

Additionally, each party's invoice will reflect any applicable administrative fees due the AAA.

Payments can be paid online using our Quick Pay option. A unique Pay PIN can be found on your invoice. To pay an invoice or statement, please visit www.adr.org, select "File or Access Your Case" and then choose "Quick Pay an Invoice."

If you have any questions, please do not hesitate to contact me.

Sincerely,

Pro Se Manager 2
Manager of ADR Services
Email: ProSeManager2@adr.org
Fax: (866)644-0234

Supervisor Information: Pro se Director, Prosedirector@adr.org
Enclosure

2023-02-15 Deposit Not Pai...

February 13, 2023

Michael Brown
Lawn Music Company
4827 Riviera Drive
Monee, IL 60449
Via Email to: lawnmusic1947@yahoo.com

Phillip Cobbs
1285 Trafalgar Drive
South Haven, MS 38677
**Via First Class Mail**

Case Number: 01-22-0003-7209

Lawn Music Company-vs- Willie C. Cobbs

Dear Parties:

As of this date, we have not received Respondents deposit of $ to cover the neutral's compensation and expenses. If you believe that this is an error, please contact the undersigned as soon as possible.

If the outstanding balance is not brought current by **February 21, 2023**, the American Arbitration Association (the AAA) will inform the arbitrator which party has not paid and the amounts owed. The arbitrator will have a number of options including:

- The arbitrator may proceed with the hearing without full deposits. As arbitrator compensation and expenses are incurred, the AAA will distribute the share of payment owed from the deposits received and will continue our efforts to collect any outstanding balance
- The arbitrator may choose to resign, in which case the AAA will fill the vacancy with an arbitrator who will agree to serve without full deposits as outlined above
- The arbitrator may suspend or terminate the case

Alternatively, in accordance with the Commercial Arbitration Rules, a party may make a deposit on behalf of the non-paying party to avoid any possible interruption of the case. While we would prefer not to make this request of a party that has met its deposit obligations under the rules, the burden of funding the process falls on the parties and neither the AAA nor the arbitrator can cover these costs. The party then may make the repayment of this deposit part of its claim to the arbitrator.

If Claimant is willing to cover the unpaid deposit, please confirm this commitment in writing and make payment to the AAA by **February 21, 2023**. Please send your payment directly to me to ensure that it receives prompt attention.

Payments can be paid online using our Quick Pay option. A unique Pay PIN can be found on your invoice. To pay an invoice or statement, please visit www.adr.org, select "File or Access Your Case" and then choose "Quick Pay an Invoice."

Thank you for your attention, and please do not hesitate to contact me should you have any questions.

Sincerely,
/s/
Pro Se Manager 2
Manager of ADR Services
Email: ProSeManager2@adr.org

Fax: (866)644-0234

(No Recipient) 11h
Lawn Music Company v. Willie C. Cobbs - Case 01...

Star Forward Download Delete Share

EX. 9 1 OF 2

American Arbitration Association
Commercial Arbitration Tribunal

Lawn Music Company (Claimant)
-vs-
Willie C. Cobbs (Respondent) Case Number: 01-22-0003-7209

**FINAL AWARD**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties dated January 28, 1971; having been duly sworn, having duly heard the proofs and allegations of self-represented Clamant Michael Brown and Respondent William C. Cobbs, being deceased, did not appear, hereby AWARD as follows:

1. This is an Award for an arbitration conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), effective September 1, 2022 ("Rules"). The oral hearing was conducted by Zoom on June 12, 2023 before Arbitrator Daniel P. Albers, who was duly appointed by AAA in January 2023. Claimant was given time to provide documents and arguments on the documents to the Arbitrator by June 28, 2023, but failed to do so. The hearing and record were closed on June 28, 2023 with an award due by July 28, 2023.

2. Claimant Lawn Music Company brings this arbitration claim against Respondent Willie C. Cobbs for claimed breach of a 1971 contract. The matters to be arbitrated are limited in that contract to the two specific songs identified in that contract: "Slow Down Baby" and "Hoppim'Bird."

3. Claimant admitted at final hearing that Respondent Willie Cobbs died in March 2022. The arbitration demand at issue here was made September 15, 2022 and was not pending when Mr. Cobbs died.

4. Pursuant to well-accepted law in Illinois and Mississippi law and the AAA Rules, the arbitrator has jurisdiction to determine his or her own jurisdiction. Mr. Cobbs resided and died in Mississippi. Therefore, Mississippi law applies to whether and how jurisdiction may be obtained for a contract claim against a deceased person's estate. Claimant asserts that Mr. Cobbs' personal representative, his son, was given notice of this proceeding. But it provides no evidence of such notice or that Mr. Cobbs' son is the duly appointed executor or administrator of Mr. Cobbs' estate. Miss. Code Ann. 91-7-237 provides in pertinent part:

"When either of the parties to any personal action shall die before final judgment, the executor

EX 9 2 OF 2

or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator. If such executor or administrator, having been duly served with a scire facias or summons five days before the meeting of the court, shall neglect or refuse to prosecute or defend the suit, the court may render judgment in the same manner as if such executor or administrator had voluntarily made himself a party to the suit. The executor or administrator who shall become a party shall be entitled to a continuance of the cause until the next term of the court."

Mississippi law further provides that suit against a deceased defendant may proceed to judgment without probating that claim against the estate. *Dillard & Coffin Co. v. Woollard, 124 Miss. 677, 87 So. 148, 1920 Miss. LEXIS 554 (Miss. 1920).*

Without evidence that Mr. Cobbs' executor or administrator was served with this arbitration demand, I do not have jurisdiction over Mr. Cobbs' estate as a Respondent and, therefore, I dismiss this matter without prejudice. This is not a finding on the merits.

The administrative fees of the American Arbitration Association totaling $9,350.00 shall be borne by Claimant, and the compensation of the arbitrator totaling $2,137.50 shall be borne by Claimant.

I, Daniel P. Albers, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Dated: July 17, 2023

Daniel P. Albers

Arbitrator

Aug 1, 2023 EX 10

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between:
Case Number: 01-22-0003-7209 Lawn Music Company
-vs-
Willie C. Cobbs

## DISPOSITION OF APPLICATION FOR MODIFICATION OF AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated January 28, 1971, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and having previously rendered an Award dated July 17, 2023, and Claimant Lawn Music Company having filed an application for MODIFICATION dated August 7, 2023, and Respondent Willie C. Cobbs, being deceased, having thus not responded, I do hereby, DECIDE, as follows:

Claimant apparently now provides its "evidence" on the merits of its claim, that was to have been provided by June 28, 2023, and it fails to give any reason why this evidence was not timely provided. Claimant does not ask that the Arbitrator interpret the Award, nor does it seek to modify the Award based on any clerical, typographical or computational error, as Commercial Rule 52(a) requires. Instead it seeks a ruling now on the merits based on new evidence it failed to previously and timely provide. But Rule 52 states:" The arbitrator is not empowered to re-determine the merits of any claim already decided." I find that I do not have authority to consider the motion to modify and therefore it is denied. The Award dated July 17, 2023, is reaffirmed and remains in full force and effect.

I, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

August 28, 2023

Date ARBITRATOR

Michael Brown
LAWN Music Company
LAWN Music Company V. Willie C. Cobbs
Case Number 01-22-0003-7209

16. MODIFICATION OF AN AWARD BY AN ARBITRATOR

FINAL AWARD

Arbitrator Danielle P. Albers

Pursuant to well-accepted law in Illinois and Mississippi law and the AAA Rules, the arbitrator has jurisdiction to determine his or her own jurisdiction. Mr. Cobbs resided and died in Mississippi. Therefore, Mississippi law applies to whether and how jurisdiction may be obtained for a contract claim against a deceased persons estate. Claimant asserts that Mr. Cobbs personal representative, his son, was given notice of this proceeding. But it provides no evidence of such notice or that Mr Cobbs son is the duly appointed executor or administrator of Mr. Cobb's estate Miss. Code Ann. 91-7-237 provides in pertinent part:

When either of the parties to any personal shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator. If such executor or administrator, having been duly served with a scire facias or summons within five days before the meeting of the court, shall neglect or refuse to prosecute or defend the suit, the court may render judgment in the same manner as if such executor or administrator had voluntarily made himself a party to this suit. The executor or administrator who shall become a party shall be entitled to a continuance of the cause until the next term of court.

Without evidence that Mr. Cobbs executor or administrator was served with this arbitration demand, I do not have jurisdiction over Mr. Cobbs estate as a respondent and, therefore, Idismiss this matter without prejudice. This is not a finding on the merits.

PROOF OF EVIDENCE

Michael Brown called Attorney Robert G. Serio who gave me the contact information for Phillip Cobbs the executor of the estate of Willie C. Cobbs, before I can complete the Demand for Arbitration application.

Michael Brown called Attorney Robert G. Serio after the Arbitration Award for proof that Phillip Cobbs is the Executor of the estate of Willie Cobbs.

see Exhibit 1. Email from Estates Attorney Robert G. Serio

On February 15, 2023, is presented to the Circuit Court of Monroe County, Arkansas, Probate Division, the petition of Phillip Cobbs, the duly appointed Executor of the Estate of Willie C. Cobbs, deceased, for partial distribution.

Thursday July 20, 2023

1. Willie C, Cobbs resided in Brinkley Arkansas.

1.A see Ex. (1)A. Willie C. Cobbs Obituary

see Ex. (2). Listed on BMI Repertoire search Willie C. Cobbs Hoppin Bird, Writer Willie C Cobbs. Publishers Drop Top Music, and La Tasha Publishing, 1426 Blues Road, Brinkley AR. 72012-9227. phone 870-734-1340.

Ex (3) Slow Down Baby Writer Willie C. Cobbs, Publisher Embassy Music Corporation.

When the Demand for Arbitration was filed. Brief description of the dispute. Willie C. Cobbs changed the Publishing to his daughters name La Tasha Publishing in 1994, Willie C, Cobbs assigned all rights to the Musical Composition to Embassy Music Company and Katrina Publishing in 1997 owned by Lawn Music Company and recorded in 1971 as Ruler 900, our record label.

Exhibit (4)Email from Kevin McGee on October 31, 2022

We have researched this song Slow Down Baby, and it is in dispute at Harry Fox and another Publisher CD BABY OBO La Tasha Music. We are working to resolve this as soon as possible. Thanks for sending that Allmans Brothers cut, I will make sure it is properly licensed as soon as we resolve that dispute.

Exhibit (5). Email on November 7, 2022, from Kevin McGee

Hi Mike we were able to get the other publisher and CD BABY OBO La Tasha Music to remove their claim. So the song is now properly credited to Embassy Music at Harry Fox and registered with BMI as well.

Exhibit (6). Text Message from Michael Brown to Phillip Cobbs

phone number 901-230-3650, copy of email from Kevin McGee at Wise Music Group/Embassy Music Company saying that Phillip Cobbs's sister, La Tasha Cobbs Carthans removed her claim to the song. Also, in the message that was sent to Phillip Cobbs that Wise Music is a third party can we come with a settlement.

Lawn Music Company is asking for Modification on Award

1. The Modification on the Final Award making the Arbitrator duties not to come to an end (Chi Ins. Co. v. Gen Reinsurance Corp., 2019 wl 5387819, at * 2 (S.D.N.Y. Oct. 22, 2019. Arbitrators have the inherent authority to modify their awards to (1). Correct a mistake that is apparent on the face of the award.

(2) Decide an issue that has been submitted but that has not been completely adjudicated by the

original award that seems to be complete but proves to be ambiguous in its scope an implementation. See (Colonial Penn, 943 f. 2d at 331-32, Play Star, S.A.de C.V. Haschel Exp., Corp., 2003 wl 1961625, at nn. 5-6 (S.D.N.Y. April 28, 2003) see also Gen. Re life Corp. v Lince Nat`l life ins. Co.., 909 f. 3d 544, 548-49 (2d Ar 2018).E. Sea bas Const, Co. v. Gray Const., INC 553 f 3d 1, 4-5(Ist Cir. 2005).

Where one of these exceptions applies, Arbitrators may make appropriate modifications to the award without express party consent because to hold that a joint request is required before an arbitrator may clarify or complete an award would empower a party that would benefit from an error to prevent its Correction" see (INT`l Bhd. of teamsters local 631 v. Silver state Disposal Serv., INC.,109 f. 1409, 1412 (9th Cir. 1997). These exceptions are narrowly construed to prevent arbitrators from engaging practices that might encourage them to change their reasoning about a decision to correct a distribution of an award or change a party's expectations about its rights and liabilities contained in an award. (ma lack, 119 f 3d at 992, see WMA, INS. V. Wynn, 105 f. Supp, 2d 833, 835, 840 (S.D. Ohio 2000), affd,32 f. Appx 726.729-30 (6th Cir 2021.

AUTHORITY TO MODIFY AWARD UNDER ARBITRATION RULES.

AAA) and its (I COR) these rules address arbitrators' authority to reconsider and modify their awards.

see AAA Commercial Arbitration Rules, R-

Exhibit (7). Receipt from the United States Postal Service that the Demand Letter was sent Via: mail on September 26, 2022, to Phillip Cobbs the Executor of the Estate of Willie C. Cobbs and delivered in two days on September 28, 2022.

EX(1). Cover Sheet and 3 pages

Re: Estate Willie C. Cobbs, Deceased 48PR-22-4

From: Mike Brown (lawnmusic1947@yahoo.com)

To: office@arkaglaw.com

Date: Thursday, July 20, 2023 at 04:53 PM CDT

Thank you

Sent from Yahoo Mail on Android

On Thu, Jul 20, 2023 at 4:39 PM, Ark Ag Law, PLLC
<office@arkaglaw.com> wrote:

> Mr. Brown:
>
> Oh, behalf of Mr. Serio I have attached a file-marked copy of the Order for Partial Distribution regarding the above-referenced matter.
>
> Tammy Reynolds
>
> Secretary to Robert G. Serio
>
> ARK AG LAW, PLLC
>
> Agricultural & Rural Counselors
>
> 201 Madison St.
>
> P.O. Box 224
>
> Clarendon, AR 72029
>
> (870) 747-3813 Office
>
> (870) 747-3767 Fax

EXiBiT I

/

ELECTRONICALLY FILED
Monroe County Circuit Court - Probate Division
Tina Wofford, County Clerk
2023-Feb-15 10:43:31
48PR-22-4
C01D02 : 3 Pages

**IN THE CIRCUIT COURT OF MONROE COUNTY, ARKANSAS**
**PROBATE DIVISION**

**IN THE MATTER OF THE ESTATE OF**
**WILLIE C. COBBS, Deceased** **NO. 48PR-22-4**

**ORDER FOR PARTIAL DISTRIBUTION**

Now on this 15th day of February, 2023 is presented to the Circuit Court of Monroe County, Arkansas, Probate Division, the petition of Phillip Cobbs, the duly appointed Executor of the Estate of Willie C. Cobbs, deceased, for Partial Distribution; and upon said Petition, consents to Partial Distribution executed by the distributees under the will of Willie C. Cobbs, deceased, and other matters and things before the Court, the Court doth find:

That at the death of Willie C. Cobbs he was entitled and received certain royalties for songs which he had written;

That said royalties are an asset of the estate;

That under the will of Willie C. Cobbs, his siblings were to receive his assets.

That Joyce Thomas, a sister, is deceased;

That the other siblings desire that a daughter of Willie C. Cobbs, namely Latasha Cobbs Carthans, be the recipient of the right to receive royalties if there be any forthcoming;

That each of said siblings have signed a consent allowing the Executor to transfer said rights to receive royalties to Latasha Cobbs Carthans;

That there are no outstanding creditors and the time for filing claims has passed.

**IT IS, THEREFORE, ORDERED, CONSIDERED AND ADJUDGED** that Phillip Cobbs be and is hereby authorized to make a partial distribution of the assets of the Estate of Willie C. Cobbs, deceased, by distributing to Latash Cobbs Carthans all royalties and rights to receive royalties which Willie C. Cobbs was entitled at the time of his death or to which his estate may become entitled to receive at a later date.

______________________________
CIRCUIT JUDGE

______________________________
DATE

**Case Title:** WILLIE C COBBS

**Case Number:** 48PR-22-4

**Type:** ORDER DISTRIBUTION

So Ordered

Danny W. Glover, 1sl Circuit, Divison 2, Judge

EX. 2 2 pages Page 1

1:16

BMI SONGVIEW

SLOW DOWN BABY

Reconciled ?

| TOTAL % CONTROLLED | | WORK ID | ISWC |
| --- | --- | --- | --- |
| BMI | 100% | 1356940 | |
| ASCAP | 0% | 897258423 | T9182897763 |

## Writers / Composers

% CONTROLLED BMI: 50% ASCAP: 0%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
| --- | --- | --- |
| BROWN JOSEPH CHARLES | BMI | 00086427943 |
| COBBS WILLIE C | BMI | 00006402333 |

## Performers

*No Data Available*

Exhibit 3 — 2 pages Page

1:07

BMI SONGVIEW

## HOPPIN BIRD

Reconciled ?

| TOTAL % CONTROLLED | | WORK ID | ISWC |
|---|---|---|---|
| BMI | 100% | 1930334 | |
| ASCAP | 0% | 902449459 | T9043545568 |

## Writers / Composers

% CONTROLLED BMI: 50% ASCAP: 0%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| COBBS WILLIE C | BMI | 00006402333 |

## Performers

*No Data Available*

Page 2

## Publishers

% CONTROLLED BMI: 50% ASCAP: 0%

| PUBLISHERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| DROP TOP MUSIC | BMI | 00074092283 |
| LA TASHA PUBLISHING | BMI | 00143419685 |

1426 BLUES RD
BRINKLEY, AR 72021-9227
(870) 734-1340

View Catalog

Sent from Yahoo Mail on Android

Exibit 4 1 page

RE: Willie c cobbs

From: McGee, Kevin (kevin.mcgee@wisemusic.com)

To: lawnmusic1947@yahoo.com

Date: Monday, October 31, 2022 at 11:52 AM CDT

Hi Mike,

Thanks for reaching out. Are you inquiring about the song "Slow Down Baby"? We have researched this song, and it is in dispute at Harry Fox with another publisher CD BABY BETA OBO LA TASHA MUSIC. We are working to resolve that dispute as soon as possible.

But I have confirmed with our royalties department that your account (EST. JOE BROWN / LAWN MUSIC CO. INC. c/o MIKE BROWN) is properly set up as the recipient and any earnings we receive for this work will be turned over to you.

Thanks for sending that Allman Brothers cut, I will make sure that is properly licensed as soon as we resolve that dispute.

Thanks,

**Kevin McGee**
Director, Digital & Mechanical Licensing

1247 6th Street - Santa Monica - CA - 90401

Tel: 310-393-9900

https://us.wisemusiccreative.com/

Wise Music Group | 50 years

Bergamo | Berlin | Copenhagen | London | Los Angeles | Madrid | New York | Paris | Sydney | Tokyo

**From:** Mike Brown <lawnmusic1947@yahoo.com>
**Sent:** Friday, October 28, 2022 10:48 AM
**To:** McGee, Kevin <Kevin.McGee@wisemusic.com>
**Subject:** Willie c cobbs

How are things coming.

Exibit 5 2 pages 1

HOME MAIL NEWS FINANCE SPORTS ENTERTAINMENT LIFE SEARCH SHOPPING Upgrade Now

Find messages, documents, photos or peo Advanced Home

Back Archive Move Delete Spam 28

**Mike Brown** <lawnmusic1947@yahoo.com> Wed, Nov 16 at 9:52 PM
To: Kevin.McGee@wisemusic.com

Hi Kevin, thanks for properly setting us up,I am ready for us to come with a setflement agreement, it's been going on to long.

Sent from Yahoo Mail on Android

On Mon, Nov 7, 2022 at 5:17 PM, McGee, Kevin <Kevin.McGee@wisemusic.com> wrote:

Hi Mike,

We were able to get the other publisher CD BABY BETA OBO LA TASHA MUSIC to remove their claim. So the song is now properly credited to Embassy Music at Harry Fox, and also registered with Embassy Music at BMI as well.

Thanks,
Kevin

**From:** Mike Brown <lawnmusic1947@yahoo.com>
**Sent:** Monday, November 7, 2022 9:50 AM
**To:** McGee, Kevin <Kevin.McGee@wisemusic.com>
**Subject:** RE: Willie c cobbs

Hi Kevin, how are you coming with the dispute

Sent from Yahoo Mail on Android

On Mon, Oct 31, 2022 at 11:52 AM, McGee, Kevin <Kevin.McGee@wisemusic.com> wrote:

Hi Mike,

Thanks for reaching out. Are you inquiring about the song "Slow Down Baby"? We have researched this song, and it is in dispute at Harry Fox with another publisher CD BABY BETA OBO LA TASHA MUSIC. We are working to resolve that dispute as soon as possible.

But I have confirmed with our royalties department that your account (EST. JOE BROWN / LAWN MUSIC CO. INC. c/o MIKE BROWN) is properly set up as the recipient and any earnings we receive for this work will be turned over to you.

Thanks for sending that Allman Brothers cut, I will make sure that is properly licensed as soon as we resolve that dispute.

Thanks,

How Do You Close Faster and Grow More?
Smarter GTM™: Your Catalyst to Driving Revenue Growth
Find out How
Demandbase

EXHIBIT 5 Page 2

# RE: WILLIE COBBS

From: McGee, Kevin (kevin.mcgee@wisemusic.com)

To: lawnmusic1947@yahoo.com

Cc: john.castaldo@wisemusic.com

Date: Monday, September 26, 2022 at 08:10 PM CDT

Hi Mike,

John forward me your question below, my apologies for not responding sooner. I did take some time to go through the previous correspondence, litigation, and related agreements.

Can you explain what the dispute is regarding the 1971 agreement for the work SLOW DOWN BABY? The attachments you sent do not include details of the claim. I am happy to answer any questions you have or discuss further.

Thank you,

**Kevin McGee**
1247 6th Street - Santa Monica - CA - 90401
Tel: 310-393-9900
https://us.wisemusiccreative.com/

WiseMusicGroup 50 years

Bergamo | Berlin | Copenhagen | London | Los Angeles | Madrid | New York | Paris | Sydney | Tokyo

Begin forwarded message:

**From:** Mike Brown <lawnmusic1947@yahoo.com>
**Date:** August 31, 2022 at 7:25:13 PM EDT
**To:** "Castaldo, John" <john.castaldo@wisemusic.com>, "Arrindell, Jonathan" <jonathan.arrindell@wisemusic.com>
**Subject: Fw: WILLIE COBBS**
**Reply-To:** "lawnmusic1947@yahoo.com" <lawnmusic1947@yahoo.com>

Hi, Mr. John Castaldo, I filed the 1971 agreement with the AMERICAN ARBITRATION ASSOCIATION. Here's a copy of what was filed and the 1971 agreement for the Musical composition by Lawn Music company and Willie c. Cobbs. Can you tell me who is the administrator for Willie cobbs Estate

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Mike Brown" <lawnmusic1947@yahoo.com>
**To:** "Mike Brown" <lawnmusic1947@yahoo.com>

EX 6

2 pages Page 1

7:51

Phillip And Vera...
19012303650

Hi Phillip, this is the email from Wisemusic but they are only a third party, I haven't heard from you. Before the Arbitration hearing can we come with a

Enter message

1 2 3 4 5 6 7 8 9 0

I did Not have his E-Mail EXhibiT #6 2 pages Page 2

7:51

Phillip And Vera...
19012303650

I haven't heard from you. Before the Arbitration hearing can we come with a settlement.

Me
Nov 7, 5:17 PM
1 attachment

Hi Mike,

Enter message

1 2 3 4 5 6 7 8 9 0

EXHIBIT 1 1 Page

UNITED STATES POSTAL SERVICE.

MATTESON

MATTESON, IL 60443-9998

09/26/2022 04:33 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| PM Express 2-Day Flat Rate Env | 1 | | $26.95 |
| Southaven, MS 38671 | | | |
| Flat Rate | | | |
| Signature Waiver | | | |
| Scheduled Delivery Date | | | |
| Wed 09/28/2022 06:00 PM | | | |
| Money Back Guarantee | | | |
| Tracking #: | | | |
| EI029567565US | | | |
| Insurance | | | $0.00 |
| Up to $100.00 included | | | |
| Total | | | $26.95 |

Grand Total: $26.95

Debit Card Remit $26.95

Card Name: MasterCard
Account #: XXXXXXXXXXXX7043
Approval #
Transaction #: 758
Receipt #: 035971
Debit Card Purchase: $26.95
AID: A0000000042203 Chip
AL: DEBIT
PIN: Verified DEBIT

029 567 565 US

Sent from Yahoo Mail on Android